Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5954 | **DATE** | 4/15/2002 |
| **CASE TITLE** | TAYLOR vs. CRUCIBLE SERVICE CENTER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
　　　☐ FRCP4(m)　☐ General Rule 21　☐ FRCP41(a)(1)　☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. This action is dismissed in its entirety. All previously set dates are stricken. Any other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 1 6 2002 | 28 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/15/2002 | |
| | | 02 APR 16 AM 7:47 | date mailed notice | |
| JS | courtroom deputy's initials | | JS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL F. TAYLOR, )
)
Plaintiff, )
)
v. )
)
CRUCIBLE SERVICE CENTER, ) No. 01 C 5954
)
Defendant. )

DOCKETED
APR 1 2002

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 3, 2001, pro se plaintiff Michael F. Taylor ("Taylor") filed a single-count complaint against defendant Crucible Service Center, ("Crucible") alleging that Crucible terminated his employment on the basis of his race and age. Crucible filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. This court finds that counsel for defendant has properly appraised Taylor of the requirements of a proper response to a motion for summary judgment, yet Taylor's response to defendant's motion does not meet the standards set forth in Local Rule 56.1(b)(3)(A) and (B). Despite Taylor's failure, this court accepts Taylor's response as it stands and will consider Taylor's response in the evaluation of this motion. Having considered the matter fully, for the reasons stated herein, defendant's motion for summary judgment is GRANTED. This case is dismissed in its entirety with prejudice.

## STATEMENT OF FACTS[1]

Crucible is a steel receiving, processing and distributing warehouse. From December 1994 until June

---

[1]The following facts are undisputed and are from the defendant's Local Rule 56.1(a) statement of material facts and accompanying exhibits. As explained fully later in this opinion, plaintiff's submissions have been accepted and considered in determining this matter.

1



30, 2000, Taylor worked in Crucible's Chicago warehouse. In the Chicago warehouse, steel is inventoried, milled, cut and distributed to Crucible sales facilities in the United States and Canada. During Taylor's employment at Crucible, James Boyd ("Boyd") was Taylor's immediate supervisor. From April 1997 to August 2000, Tim Kerrigan ("Kerrigan") was the general manager of the Chicago warehouse.

Prior to working at Crucible, Taylor did not have any supervisory experience. Taylor first applied for a warehouse position at Crucible on November 7, 1994. Crucible did not hire Taylor at that time because Taylor was unable to read a micrometer, which was part of Crucible's Warehouse Worker Assessment Battery Test and also required to be a planer mill operator. Eventually, in December 1994, Taylor came to Crucible through a temporary agency and worked as a "Warehouse Person I" where he assisted in shipping and receiving, loading and unloading trucks. In April 1995, Taylor became a full-time Crucible employee. On June 1, 1995, Taylor received a merit pay increase to $8.41 per hour. In November 1, 1995, Taylor received another merit pay increase to $9.20 per hour. On February 27, 1996, Crucible promoted Taylor to "Warehouse Person II," and Taylor received another merit pay increase to $10.22 per hour. During this time of employment, Taylor received training on plate, block and band saws as well as overhead cranes. In December 1996, Taylor received another merit pay increase to $10.84 per hour.

Generally, Crucible offers voluntary overtime work to its warehouse employees. The general manager at Crucible determines on a weekly basis whether there is sufficient work to permit overtime and posts when weekend work/overtime is available. Crucible pays all its employees at a rate of time-and-a-half their regularly hourly rate for overtime work, work over 40 hours per week. Crucible pays double the regular hourly rate for work on Sunday for employees who have worked over 40 hours in a given week and worked a minimum of four hours on Saturday. From January 1998 through June 30, 1998, Taylor worked overtime a total of five Sundays: March 15th, April 19th, May 31st and June 7th. On Sunday, January 28, 1998 and Sunday, February 22, 1998, there was only overtime work available for the planer mill operators and there

was no overtime work available for saw operators. In 1998, only one planer mill operated within Crucible's warehouse, and Taylor was not qualified to operate that mill. There was overtime work available for Taylor, however, on May 3, 1998, but Taylor chose not to sign-up for the overtime.

Taylor filed a total of three charges of discrimination against Crucible during and after his employment. Taylor filed his first charge on May 29, 1998. In this charge, Taylor claimed race discrimination in being denied the opportunity to work Sunday overtime. This charge was investigated by the Illinois Department of Human Rights ("IDHR") and on March 30, 1999, the IDHR determined that there was insufficient evidence to support Taylor's allegations.

Beginning in 1997, warehouse employees started receiving merit salary increases on a twelve to eighteen month schedule. The salary increases were based on the employee's tenure at Crucible, the employee's performance over the period in question, the financial health of Crucible generally and the financial stability of the particular facility. On June 24, 1997, Taylor received a positive performance review and received a merit pay increase to $11.48 per hour.

On August 13, 1998, Taylor received another positive performance review. While Taylor was scheduled to receive a merit pay increase at that time, due to business conditions, the corporate office decided to withhold until the fourth quarter of 1998 some employees' salary increases, including Taylor's. In August 1998, only five employees received merit increases, two Caucasians, two Hispanics, and two African-Americans. Of those five employees, each had worked for Crucible at least five years more than Taylor and had received an equivalent or better performance rating than Taylor in 1998. In the fourth quarter 1998, Crucible decided to freeze all outstanding merit increases for 1998, accordingly, Taylor did not receive a merit pay increase in 1998. In August 1999, Taylor received a merit pay increase to $12.05 per hour.

Taylor filed a second charge of discrimination against Crucible on April 26, 1999. In the 1999 charge, Taylor claimed race discrimination in being denied a pay raise in 1998. On June 9, 2000, the Equal

3

Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights, unable to find any violation based on the facts in the record at that time.

When job openings in the Chicago warehouse become available, Crucible, as part of its routine practice, notifies its employee so that they may apply for the position. If an employee is given a new position that requires training, the employee continues to receive their regular pay rate during the training period. In May 1998, Taylor informed Kerrigan that he wanted to be considered for the "Operations Manager" and "Second Shift Supervisor" positions. Kerrigan informed Taylor that he was not qualified for either position, however, due to Taylor's lack of supervisory experience. Taylor also indicated to Kerrigan that he wanted to be promoted to planer mill operator. In the summer 1998, Kerrigan offered Taylor an opportunity to train to become a planer mill operator, but Taylor refused the offer because he did not want to be trained to be a planer mill operator on second shift. In February 2000, Kerrigan again offered Taylor the opportunity to be trained on the planer mill this time on the first shift. Taylor accepted this offer.

Training usually took about four weeks, and Taylor finished his training on March 9, 2000. On March 9, 2000, Taylor milled two steel plates incorrectly. In similar fashion, on March 10, 2000, Taylor milled two more plates incorrectly. In all, six of nine plates Taylor milled unsupervised were unusable. Accordingly, Kerrigan decided that Taylor needed to be re-certified as a plane mill operator. Kerrigan outlined specific areas that Taylor needed to work on and placed Taylor back in training. Taylor remained in training on the planer mill until Taylor's employment relationship with Crucible ended on June 30, 2000. As is Crucible's policy, while Taylor was training to be a planer mill operator, Taylor received his regular rate of pay, but did not receive a higher rate of pay he would eventually qualify for once he was fully trained and certified as a planer mill operator.

On June 9, 2000, Taylor attended an open house held by Castle Metals, which had advertised warehouse positions paying $15.50 per hour. Taylor interviewed with Castle Metals in the middle of June

4

and received a job offer soon thereafter. Taylor resigned from Crucible at the end of his shift on June 30, 2000, tendering a one-paragraph letter to Kerrigan.

Taylor filed a third and final charge of discrimination on July 10, 2000. Taylor claimed race discrimination, retaliation and constructive discharge because Crucible denied him promotions and denied him a wage increase as a planer mill position. On August 24, 2000, the EEOC issued a Dismissal and Notice of Rights unable to find any violation based on the facts in the record at that time. Taylor initiated this lawsuit on August 3, 2001.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The

evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment. Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995) (explaining that hearsay testimony may not be considered in summary judgment proceeding).

Despite being fully appraised of his obligations, Taylor has failed to properly respond to this motion for summary judgment. Local Rule 56.1(b) states that a party opposing a motion filed pursuant to Fed.R.Civ.P. 56 shall file opposing affidavits, a supporting memorandum of law, and a concise response to each numbered paragraph of the movant's Local Rule 56.1(a) statement of uncontested facts. See Local Rule 56.1(b). Taylor did not file a memorandum of law in opposition to this motion for summary judgment nor did Taylor specifically respond to each numbered paragraph of defendant's 56.1(a) statement of facts. Taylor, instead, in opposition to this motion, filed an untitled document responding to Crucible's motion for summary judgment. In this document, Taylor offers a statement of his position in this case and offers numerous documents pertaining to the factual background of this case. Taylor's submissions, however, do not adequately respond to defendant's 56.1(a) statement of uncontested facts and Taylor's statement do not address any of the legal issues surrounding this case.

Rule 56 of the Federal Rules of Civil Procedure does not authorize the granting of summary judgment as a sanction for failing to file a proper response to a motion for summary judgment. See Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir. 1993). Rule 56(e) permits summary judgment only "if appropriate - that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Id. Taylor's derelictions, however, are not without cost. By failing to file a proper Local Rule 56.1(b) statement, Taylor admits, in effect, to all factual assertions presented by the defendant. See Local Rule 56.1(b)(3)(B); Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 689 (7th Cir. 2000) (accepting as true all material facts set out in Local Rule 56.1(a) statement,

where non-moving party has failed to comply with Local Rule 56.1(b)). As a result, this court must determine whether summary judgment is proper as a matter of law by reviewing the record and the facts as presented by defendant and by drawing all justifiable inferences in favor of Taylor. See Wienco, Inc. v. Katahn Associates, Inc., 965 F.2d 565, 568 (7th Cir. 1992).

## ANALYSIS

I. Notice to Pro Se Litigant Taylor.

The Federal Rules of Civil Procedure forbid a district court from acting on a summary judgment motion without giving the nonmoving party a reasonable opportunity to appropriately respond. Fed. R. Civ. P. 56. A motion for summary judgment should not be granted against a pro se litigant unless the pro se litigant receives clear notice of the need to file affidavits or other responsive materials and of the consequences of not responding. See Timms v. Frank, 953 F.2d 281, 284 (7th Cir. 1992). The United States Court of Appeals for the Seventh Circuit explains that this notice should come from opposing counsel and should include a short, plain statement of the need to respond to a summary judgment motion, giving both the text of Federal Rule of Civil Procedure 56(e) and an explanation of the rule in ordinary English. Id. If opposing counsel fails to provide the requisite notice then the district court should do so. Id.

In this case, Taylor was not represented by counsel when defendant filed this motion for summary judgment. Therefore, defendant had a duty to appraise Taylor of his obligation to properly respond to this motion for summary judgment and if defendant neglected this duty then that duty would fall onto this court. On March 8, 2002, counsel for defendant certified to this court that counsel sent to Taylor via overnight delivery what was labeled as "Defendant's Local Civil Rule 56.2 Notice to Pro Se Litigant Opposing Motion For Summary Judgment" ("Notice"). Counsel also provided to this court a copy of the Notice sent to Taylor. In the Notice, counsel explained to Taylor in laymen's terms what a motion for summary judgment is, what such a motion means, and what Taylor's responsibilities were in response to a motion for summary judgment.

7

In addition, the Notice explains Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.1(a) and 56.1(b) and instructs Taylor how to proceed in an attempt to defeat this motion for summary judgment. This Notice is clear and concise, and satisfies the requirement of appropriate notice to pro se litigant Taylor. This court now will consider the merits of defendant's motion for summary judgment.

II. The Merits of Taylor's Complaint

Crucible is entitled to summary judgment on all of Taylor's claims in the complaint. None of Taylor's claims of discrimination or retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"), 42 U.S.C. §1981 or 42 U.S.C. §1983 have any merit. This court will discuss each of Taylor's claims in turn.

A. *Prima Facie Case of Discrimination*

Whether under Title VII or the ADEA, in order to survive a motion for summary judgment, a plaintiff must establish a prima facie case of discrimination either by direct evidence or by the indirect method outlined by the Supreme Court of the United States first in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973)(applying the indirect method of proof in Title VII case); see Johnson v. Zema Systems Corp., 170 F.3d 734, 742-43 (7th Cir. 1999)(applying the indirect method of proof in ADEA case). Under the McDonnell Douglas framework, a plaintiff bears the initial burden of producing evidence to sustain a prima facie case. If the plaintiff meets this burden, the employer must then produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. If the employer offers a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is a pretext. The ultimate burden of persuasion rests with the plaintiff to show impermissible motive or intent. See, e.g., Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 394 (7th Cir.1998).

In reviewing Taylor's prima facie case of race and age discrimination, Taylor offers no direct evidence

8

of discrimination, therefore, Taylor must proceed under the indirect method of proof. In establishing a prima facie case of discrimination under the indirect method of proof, Taylor must establish that (1) he belongs to a protected group; (2) he performed his job satisfactorily; (3) he was subjected to an adverse employment action; and (4) that similarly-situated employees outside of his protected group received more favorable treatment. 154 F.3d 389, 393-94. If Taylor fails to prove any of these elements, then Taylor's claims of race and age discrimination fail in their entirety. Id.

Upon review of the evidence in this case, it is undisputed that Taylor belongs to a protected group, performed his job satisfactorily, and was subjected to an adverse employment action. Taylor, nonetheless, has failed to establish a prima facie case of discrimination under Title VII or the ADEA because there is no evidence in the record to create a dispute of material fact regarding whether Crucible treated similarly-situated employees outside of Taylor's protected group more favorable in comparison to Taylor.

As discussed earlier, in opposition to this motion for summary judgment, Taylor has simply rested on the allegations of the compliant which are in essence: "I signed a contract with the management team on being promoted to the planer mill job position. When I asked about my performance I was told that I was doing really good. . . But I was never promoted. . . And I was passed over for the lead man job position as well,"(complaint at ¶ 12), and "I was not allowed to work on Sundays. And I was passed over for several open promotional job positions. I was trained and qualified for the planer mill job position. But I was denied the pay increase for the job position." (Complaint at ¶ 13). Upon an acute review of the record, taking all reasonable inferences in favor of Taylor, the bare allegations of the complaint are insufficient to create a material issue of fact regarding whether Crucible treated similarly-situated employees outside of Taylor's protected group more favorable in comparison to Taylor. There is not a scintilla of evidence upon which a reasonable finder of fact could reasonably find that Crucible treated similarly-situated employees outside of Taylor's protected group more favorably than Taylor. Having failed to carried his evidentiary burden of

9

establishing favorable treatment to similar-situated employees, Taylor has failed to established a prima facie case of discrimination under Title VII and the ADEA. Accordingly, summary judgment in favor of Crucible on Taylor's claims of discrimination under Title VII and the ADEA must be granted.

B.   *Prima Facie Case of Retaliation*

Title VII makes it unlawful for an employer to retaliate against an employee once the employee brings a charge of discriminatory conduct against the employer. 42 U.S.C. § 2000e-3(a); Pasqua v. Metropolitan Life Ins. Co., 101 F.3d 514, 517 (7th Cir. 1996). Having failed to present any direct evidence of retaliation, Taylor must establish that: (1) he participated in protected activity or opposed an activity made unlawful under Title VII; (2) he subsequently suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected speech, in order to demonstrate a prima facie case of retaliation under Title VII. Pasqua, 101 F.3d at 518 (citing Koelsch v. Beltone Electronics Corp., 46 F.3d 705, 708 (7th Cir.1995)); Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1457 (7th Cir. 1994). If Taylor makes this showing, the burden of producing a legitimate nondiscriminatory reason for the adverse action shifts to Crucible. Id. Once Crucible produces those reasons, Taylor bears the burden of showing that the Crucible's proffered reasons are pretext. Id.

In reviewing Taylor's prima facie case of retaliation under Title VII, Taylor fails to create a genuine issue of material fact regarding the existence of a causal connection between his adverse employment actions and his protected speech. In order to demonstrate a causal connection, a plaintiff must demonstrate that the employer would not have taken the adverse action "but for" the protected expression. See Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 479 (7th Cir. 1995)(citation omitted). Taylor's entire retaliation claim rests on the temporal proximity of Taylor's charges of discrimination and his alleged adverse employment actions. The fact that Taylor's adverse employment actions occurred after he filed his of charges of discrimination charges does not by itself suggest a causal relationship between these events. But see

10

McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796-97 (7th Cir.1997)(holding generally a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity). In this case, Taylor presents no evidence that his managers at Crucible knew of his various charges of discrimination and presents no evidence of retaliatory animus in Crucible's not providing overtime work to Taylor when Taylor wanted to work overtime, in Crucible's not providing Taylor with a pay increase in 1998, in Crucible failing to promote Taylor to a planer mill operator and in Crucible's failing to promote Taylor to other open positions within the Chicago warehouse. Having failed to create a genuine issue of material fact as to a casual link between any of Taylor's adverse employment actions and his filing of any charge of discrimination, Taylor has failed to establish a prima facie case of retaliation and summary judgment in favor of Crucible on Taylor's retaliation claim is necessary as a matter of law.

C. *Crucible's Nondiscriminatory Business Reasons*

Despite Taylor failing to establish a prima facie case of discrimination under the ADEA and Title VII or a prima facie case of retaliation under Title VII, defendant nonetheless produces legitimate, nondiscriminatory reasons as to why Taylor did not work overtime on some Sundays, why Taylor was not promoted to open positions, why Taylor did not receive a pay increase in 1998, why Taylor did not receive a pay increase to that of a planer mill operator while training to be a planer mill operator, why Taylor did not eventually become a planer mill operator and why Taylor is no longer employed with Crucible:

> As to overtime on the Sundays in question, there was no overtime work available for any employees at Crucible who were not trained on the planer mill and Taylor while claiming being denied overtime work, at times chose not work overtime when overtime was available;
>
> Taylor was not promoted to the position of Operations Manager or Second Shift Supervisor because Taylor did not possess the required supervisory experience required for either of those positions;
>
> Taylor did not get his pay increase by the end of 1998 due to a year-end, company-wide pay freeze and of the five employees that did receive pay increases in 1998, all were more senior than Taylor and had performed equally or better than Taylor in 1998;
>
> Crucible did not promote Taylor to planer mill operator because Taylor demonstrated that he had not

11

yet gained the required acumen and skill to operate the planer mill to a satisfactory level and thus needed more training and was not paid at a rate commensurate with a planer mill operator because he was not yet qualified to operate the planer mill without supervision;

Taylor is no longer employed with Crucible because he voluntarily resigned his position after he sought out and received an alternative job for a higher wage;

Taylor does not dispute defendant's legitimate nondiscriminatory business reasons, nor does Taylor present evidence demonstrating that Crucible took any of its employment actions for a forbidden reason. Having failed to establish that defendant's proffered legitimate nondiscriminatory reasons for his adverse employment actions are a pretext for discrimination or retaliation, summary judgment in favor of the defendant is necessary.

D.   *Section 1981*

By its terms, section 1981 governs contractual relationships. 42 U.S.C. § 1981(a). In order to bring a section 1981 claim there must be a contract at issue. See Gonzalez v. Ingersoll Mill. Mach. Co., 133 F.3d 1025 (7th Cir.1998). In this case, Taylor alleges in the complaint that he signed a contract to be promoted to planer mill operator, however, there is no evidence in the record to substantiate this allegation. The undisputed evidence in this case suggests that Taylor was an "at-will" employee of Crucible and that there was no contractual relationship whatsoever between Taylor and Crucible. Accordingly, Taylor's § 1981 claim is without merit because there is no evidence to create an issue of fact that Taylor was ever under contract with Crucible. Moreover, Taylor's § 1981 fails because Taylor has not provided sufficient evidence to establish a prima facie case of discrimination under Title VII. See Gonzalez, supra (dismissing § 1981 claim for failing to establish prima facie case of discrimination under Title VII using the McDonnell Douglas burden shifting method). Taking all reasonable inferences in favor of Taylor, summary judgment in favor of Crucible on Taylor's § 1981 claim is necessary as a matter of law.

E.   *Section 1983*

A cause of action under § 1983 requires a plaintiff to demonstrate that he was deprived of a right

secured by the Constitution or federal law at the hand of someone acting under color of law. Fries v. Helsper, 146 F.3d 452, 457 (7th Cir.), cert. denied, 525 U.S. 930, 119 S.Ct. 337 (1998). A private individual acts under color of law if there was a concerted effort between that individual and a state actor. Id. Establishing § 1983 liability through a conspiracy theory requires a plaintiff to demonstrate that (1) the private individual reached an understanding with a state official to deprive the plaintiff of his constitutional rights; or (2) the private individual was a willful participant in joint activity with the state or its agents to deprive the plaintiff of his constitutional rights. Id. In this case, the sole defendant, Crucible, is not a state actor and Taylor has presented absolutely no evidence in the record demonstrating that Crucible, as a private actor, reached an understanding with a state actor to deprive Taylor of his constitutional rights or that Crucible, as a private individual, was a willful participant in a joint activity with a state actor depriving Taylor of his constitutional rights. Accordingly, summary judgment on Taylor's §1983 claim in favor of Crucible must be granted as a matter law.

## CONCLUSION

For all of the reasons stated above, defendant's motion for summary judgment is GRANTED. This case is dismissed in its entirety with prejudice. All previous dates are stricken. All pending motions are moot.

ENTER:

_____
JAMES F. HOLDERMAN
Crucible States District Judge

DATE: April 15, 2002

13